Not Intended for Print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **DORIS THOMAS**, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:04CV00136 |
| | ) |
| v. | ) **OPINION** |
| | ) |
| **SUN LIFE ASSURANCE** | ) By: James P. Jones |
| **COMPANY OF CANADA,** | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

*Jimmie L. Hess, Jr., Abingdon, Virginia, for Plaintiff; Robert Barnes Delano, Jr., Sands Anderson Marks & Miller, Richmond, Virginia, for Defendant.*

The issue presented in this ERISA case is whether the plan administrator abused its discretion in denying the plaintiff long-term disability benefits. Based on the administrative record, I find that the plan administrator did not abuse its discretion in denying the plaintiff's claim and grant the defendant's motion for summary judgment.

## *I. Background.*

The plaintiff, Doris Thomas, was employed as a Quality Assurance Technician by Universal Fiber Systems, LLC, ("Universal"). Universal maintains an employee

benefit plan, Sun Life Assurance Company of Canada – Employee Group Benefits ("The Plan"), underwritten by the defendant, Sun Life Assurance Company of Canada ("Sun Life"). Sun Life is both the Plan's insurer and claim administrator. On January 17, 2002, Thomas filed an application for short-term disability benefits under the Plan, alleging total disability because of back pain, reflux symptoms, and depression.

In order to receive short-term benefits under the Plan, an applicant must, among other things, provide proof of continued total or partial disability. The Plan defines "total disability" as follows:

> Total Disability or Totally Disabled means the Employee, because of Injury or Sickness, is unable to perform all of the material and substantial duties of his own occupation and is not engaged in any occupation for wage or profit.

(Admin. R. 000014.) Sun Life determined that Thomas did not meet the definition of totally disabled and thus denied her claim on April 27, 2002.

Thomas sought review of Sun Life's denial of short-term disability benefits on August 7, 2002. On October 15, 2002, after reviewing all of the medical records, Sun Life denied Thomas's appeal and upheld its previous denial of her claim. Having exhausted her administrative remedies, Thomas filed this action on December 8, 2004, requesting that the court order the defendant to pay long-term disability benefits to her under the plan. Although Thomas now seeks recovery of long-term

benefits, in her application to Sun Life she sought only short-term benefits, and thus the denial of her short-term benefits is the only issue before the court. Thomas's cause of action arises under the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001-1461 (West 1999 & Supp. 2005) ("ERISA"), and jurisdiction of this court exists pursuant to 29 U.S.C.A. § 1132(f) (West 1999). The defendant has filed the administrative record of its decision to deny Thomas benefits, and both parties filed and briefed motions for summary judgment. Argument was heard on September 27, 2005. The case is now ripe for decision.

## II. Facts.

Thomas worked as a Quality Assurance Technician at Universal from July 18, 1993 until November 30, 2001. The job of a Quality Assurance Technician requires some physical activity, including twisting, stooping, squatting, kneeling, climbing stairs, and reaching above and below shoulder height. The heaviest weight lifted in this position is approximately thirty pounds, and approximately ninety-five percent of a given work day is spent walking or standing. Thomas stopped working at Universal due to back pain, reflux symptoms, and depression, and sought short-term disability benefits from Universal's Plan.

Thomas has seen several doctors regarding the ailments that caused her to quit Universal, including Dr. Todd H. Nairn, Dr. Robert W. Walker, Dr. James Mann, Dr. Jeffrey McConnell, and psychologist Steve Savage, Ph.D. Dr. Todd H. Nairn, Thomas's primary care physician, conducted the first medical exam related to Thomas's claim on October 22, 1999. On that date, Dr. Nairn diagnosed Thomas with gastroesophageal reflux disease, weakness, malaise, and dysphagia. On April 6, 2001, he diagnosed low back pain, depression, irritable bowel syndrome, gastroesophageal reflux disease, and obesity. In an exam on October 23, 2001, Thomas complained to Dr. Nairn of severe anxiety related to problems at work, trouble sleeping, and right shoulder pain. On March 27, 2002, Dr. Nairn diagnosed Thomas with low back pain, peripheral neuropathy, anxiety, gastroesophageal reflux disease, anemia, irritable bowel syndrome, depression, and sinusitis. In a letter dated August 27, 2002, Dr. Nairn stated that Thomas "cannot sit, stand, walk, or stoop for greater than 8 hours per day." (Admin. R. 000214.)

Dr. Walker, who specializes in internal medicine, first saw Thomas on Monday, December 3, 2001, the first day that she claims she was unable to work. On January 15, 2002, Dr. Walker prepared the Attending Physician's Statement ("APS") that was included in Thomas's application for short-term disability. In the APS, Dr. Walker explained that he saw Thomas on a monthly basis and that the most recent exam

occurred on the day he prepared the report. He listed her ailments as back and leg pain, reflux symptoms, and depression, and noted that she was ambulatory.

He further stated that her cardiac functional capacity was "complete limitation," her therapeutic class was "complete restriction," her physical impairment was "severe limitation of functional capacity," and her mental impairment was "unable to engage in stress situations or engage in interpersonal relationships." Dr. Walker explained that on a given workday, Thomas may stand or walk for one to four hours, sit for one to three hours, drive for one to three hours, use her hands for simple grasping only, and lift a maximum of five pounds. Dr. Walker noted that Thomas could not bend, squat, climb, twist, push, pull, balance, kneel, crawl, reach, or use her feet for repetitive movements. He estimated that these limitations first became applicable on December 1, 2001, the day after Thomas's last day of work. Dr. Walker indicated that Thomas was not able to work full or part time in her current job with these limitations, that she was incapable of another occupation on either a full or part-time basis, and that job modification would not enable Thomas to work with her impairment. He estimated that it would take four to six months for Thomas to recover sufficiently to perform her duties.

Medical exams from Dr. Walker on December 10, 2001, December 27, 2001, February 18, 2002, and March 1, 2002, are documented in the administrative record,

but these records do not include objective findings to support the subjective diagnoses that Walker listed on the APS. Dr. Walker's notes from December 27, 2001, simply explain that Thomas's attorney had instructed her not to return to work and that she needed a work excuse from Dr. Walker. On February 18, 2002, Dr. Walker diagnosed low back pain, depression, anxiety, anemia, irritable bowel syndrome, and gastroesophageal reflux disease, but these diagnoses were based on Thomas's subjective complaints. There were no treatment plans listed, and the record of his last examination of Thomas on March 1, 2002, did not mention any scheduled return visits or continuing treatment.

Dr. James A. Mann, a gastroenterologist, examined Thomas on March 20, 2000, June 26, 2000, and May 14, 2001. Thomas was referred to Dr. Mann for her reflux disease and irritable bowel syndrome by Dr. Nairn. A surgical pathology report performed at Dr. Mann's request on February 25, 2000, showed that there was "no specific pathologic abnormality" detected in the biopsy of Thomas's duodenum, esophagus, or colon. Dr. Mann's operative note on February 25, 2000, diagnosed "questionable esophagitis and questionable gastritis" and "probably normal colon." On March 20, 2000, Dr. Mann's impression was that Thomas had gastroesophageal reflux disease that was adequately controlled, colon spasms and pain that were inadequately controlled, and irritable bowel syndrome. By June 26, 2000, Dr. Mann

noted that Thomas's gastroesophageal reflux, constipation, and depression were all improved. In the record of his last examination of Thomas, on May 14, 2001, Dr. Mann noted that Thomas felt as though her reflux disease was much better, her constipation was better, and her sleep patterns were normal.

On May 18, 2001, and July 26, 2002, Thomas was examined by Dr. Jeffrey R. McConnell, on referral from Dr. Nairn for her low back pain. In his report dated May 18, 2001, Dr. McConnell interpreted an MRI of Thomas's lumbar spine administered on April 10, 2001, and diagnosed degenerative disc disease at L4-5 and L5-SI with disc desiccation. He did not recommend any tests, consults, procedures, or surgeries. He wrote "not applicable" behind the section of the report dealing with recommendations regarding work, and did not schedule any follow-up visits. He told Thomas to return only as needed. In his July 26, 2002, report, McConnell notes that that day's physical examination revealed "a moderately obese woman who does not appear to be in any acute distress." (Admin. Rec. 000224.) He further stated that Thomas's chronic back pain had little to do with her mechanical condition, her symptoms were not consistent with a mechanical disk problem, and, although he had no doubt that she had back pain related to degenerative disks, she did not have a serious problem. He explained that a second MRI administered on June 12, 2002, showed degenerative changes at L4-5 and L5-SI with slight bulging of the posterior

annulus, but noted that there was no significant change between the two scans. Specifically, he stated that there was no significant motor changes, no disc space collapse, and absolutely no spinal stenosis or nerve root compression evidence. He attributed her widespread pain to complex regional pain syndrom and noted there was little that could be done with respect to treatment.

At the request of Dr. Nairn, Steve Savage, Ph.D., a licensed clinical psychologist, examined Thomas for any potential psychological problems. In his psychological evaluation dated May 30, 2002, Dr. Savage noted that Thomas came to him because her attorney, who did not believe that she would be able to receive disability without a psychiatric problem, advised her to see her family doctor and have that doctor refer her to a mental health professional. Dr. Savage advised Thomas that he did not feel as though she was disabled from a psychological standpoint and noted that he was unwilling to fill out any legal forms relating to her disability claim.

During the first review of Thomas's claim, Sun Life reviewed Thomas's claim form and records from Dr. Walker. Based on this information, Sun Life determined that it would deny Thomas's short-term disability claim because she did not meet the Plan's definition of totally disabled. In its April 27, 2002, letter denying Thomas's claim, Sun Life set forth the reasons for its decision. Sun Life explained that the

medical evidence must include examinations, diagnostic findings, and test results that support Thomas's inability to work in order to meet the Plan's requirement of "[p]roof . . . satisfactory to Sun Life." (Admin. R. 000063.) It noted that Dr. Walker's diagnosis that Thomas's disability was due to back pain, reflux symptoms, and depression was based solely on subjective symptoms not supported with any objective medical information. There were no objective findings in the record to indicate that Thomas's subjective symptoms were disabling her from being able to perform the material and substantial duties of her job. Sun Life also stated that there was insufficient evidence that Thomas was under the continual and regular care of a physician as required by the plan.

On August 7, 2002, Thomas requested review of Sun Life's initial denial of short-term benefits. During the appeal process, Sun Life received the medical records of Dr. Mann, Dr. Nairn, Dr. McConnel, and Dr. Savage. Sun Life conducted a second review of Thomas's claim in which it considered all of the medical records. Sun Life concluded that the medical evidence still did not establish a level of impairment severe enough to prevent Thomas from engaging in the material and substantial duties of a Quality Assurance Technician at Universal. Sun Life again noted that the record lacked sufficient documentation to support the claim that

Thomas was totally disabled as defined by the Plan. Sun Life issued a final denial letter on October 15, 2002, and this action followed.

*III. Analysis*.

The standard to be used by the court in reviewing the decision to deny Thomas disability benefits is determined by the language of the employee benefit plan. If the Plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, the administrator's denial must be reviewed for abuse of discretion rather than de novo. *See Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 111, 115 (1989); *Boyd v. Trustees of United Mine Workers Health & Retirement Funds*, 873 F.2d 57, 59 (4th Cir. 1989). Under Universal's Plan, Sun Life has "entire discretionary authority to make all final determinations regarding claims for benefits," including authority to determine eligibility for benefits, to determine the amount of any benefits due, and to construe the terms of the Plan. (Admin. Rec. 000063.) Therefore, the abuse of discretion standard applies.

Under this deferential standard, the administrator's "decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232

(4th Cir. 1997). Such a decision is reasonable if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997) (internal quotations omitted). "'Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion . . . [and] consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1996)). Both parties to this action agreed in oral argument that abuse of discretion is the proper standard of review.

In this case, however, a conflict of interest exists because the Plan administrator is also the Plan's insurer. Therefore, Sun Life's decision will still be entitled to deference, "but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80, 87 (4th Cir. 1993). *See also Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 343 n.2 (4th Cir. 2000). Even under this modified abuse of discretion standard, I find that Sun Life acted reasonably in making its decision and that the decision was supported by substantial evidence.

The Plan provides that an eligible employee will only be considered disabled if she provides proof satisfactory to Sun Life that she is (1) totally disabled, namely

"unable to perform all of the material and substantial duties of her own occupation," and (2) under the regular and continuing care of a physician "who provides appropriate treatment by means of examination and testing in accordance with the disabling condition." (Admin. R. 000036, 000014.) The administrative record reveals several facts that would reasonably lead to a decision to deny Thomas's claim for benefits under this rigorous disability criteria. First, Dr. Walker opined in his APS that Thomas was disabled, but his medical records did not contain any objective clinical findings to support the subjective symptoms and diagnosis listed. Dr. Walker also did not list any treatment plan for Thomas's alleged disability. Furthermore, several other medical opinions conflict with Dr. Walker's conclusion that Thomas was disabled. Dr. Savage told Thomas directly that he did not feel that she was disabled from a psychiatric standpoint. Dr. McConnell noted that he did not think Thomas had any serious problem with her back and did not feel that Thomas needed any further medical tests, procedures, or treatment. Dr. Mann, the gastroenterologist, found that Thomas's gastroesophageal reflux disease, constipation, and depression were all improved. Even Dr. Nairn, Thomas's primary care physician, stated in a letter relating to Thomas's disability claim only that Thomas could not sit, stand, walk, or stoop beyond eight hours per day. Thomas's claim statement indicates that her work week consisted of five eight-hour days, and thus she could still work her full

schedule even with Dr. Nairn's restrictions. Given the conflicting opinions in the record and Sun Life's broad discretion under the plan, Sun Life did not abuse its discretion in denying Thomas's claim for disability benefits.

*IV. Conclusion.*

Given the deferential standard of review in this case, I find that Sun Life's decision to deny benefits was the result of a deliberate reasoning process and is supported by substantial evidence. Therefore, the defendant's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: October 3, 2005

/s/ JAMES P. JONES
Chief United States District Judge